CROSS COUNTRY LEASING CORPO-
RATION, Appellee,

v.

RYDER TRUCK RENTAL, INC.,
Appellant.

No. 14047.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1970.

Decided Oct. 20, 1970.

Richard C. Rakes, Roanoke, Va. (Gentry, Locke, Rakes & Moore, Roanoke, Va., on the brief), for appellant.

S. Strother Smith, III, Abingdon, Va., for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge, and WIDENER, District Judge.

PER CURIAM:

We affirm the District Court's construction and application of the truck rental agreement here under interpretation. The lessor is Cross Country Leasing Corporation, chartered in Alabama with its principal place of business there. The lessee is Ryder Truck Rental, Inc., a Florida corporation. Both are licensed in Virginia. The subsidiary facts were uncontested.

Cross Country brought this action for $11,079.00 in the United States District Court for the Western District of Virginia against Ryder to recover the cost and incidental expenses in repairing one of its trucks extensively damaged in North Carolina while operated by Ryder under the lease. Its terms stipulated that the lessee would not be liable for collision impairment beyond $250.00 unless the injuries occurred while the vehicle was used or driven in violation of the contract.

The defendant was held at fault because of such misuse of the conveyance,

and the plaintiff was given judgment for $7,204.68, plus interest and attorney's fees, in a jury-waived trial. There is no contest in the computation of the claim. The sole issue is the entitlement to an adjudication of any liability at all beyond the limitation of $250.00.

At trial the plaintiff's evidence was directed to the acts of the defendant said to constitute breaches of the contract and creating liability on the part of the defendant. The District Judge stated his fact findings, legal conclusions and decision fixing Ryder's liability with precision, clarity and comprehension. We adopt them as our opinion. Cross Country Leasing Corp. v. Ryder Truck Rental, Inc., 302 F.Supp. 1274 with appendix, 317 F.Supp. 622 (W.D.Va.1969).

The judgment on review is approved.

Affirmed.

HAYNSWORTH, Chief Judge (dissenting):

Finding no justification for holding Ryder liable for the full amount of the damages to the rented vehicle, I respectfully dissent.

The vehicle in question was a heavy duty tractor which Ryder obtained from Cross Country as an emergency replacement for one of its own tractors which had broken down in mid-trip. When the trip was completed, Ryder arranged to have the rented tractor towed from its terminal in Augusta, Georgia, to Cross Country's terminal in Abingdon, Virginia by one of its own tractors which was scheduled to pick up the disabled Ryder tractor which had been left near Erwin, Tennessee. During the trip to Abingdon, the towing device, called a Towmaster, failed and the rented tractor ran off the road and overturned.

The standard form rental contract provided by Cross Country makes detailed provision for the allocation of liability for losses from accident or theft and for various other costs and expenses which might arise during the rental period. In general, the lessee, in this case Ryder, is required to bear the

financial burden. However, the contract provides the lessee with protection against the risk of liability for certain losses. Except for claims not fully covered by the liability insurance furnished by Cross Country, the lessee is not responsible for claims for death or injury to persons or damage to property arising out of the use of the rented vehicle. Similarly, although the lessee agrees to indemnify the owner for all loss or damage to the vehicle during the rental period, his actual liability is expressly limited to $250. And even that limited liability can be avoided in the case of collision damage to the vehicle by payment of an additional fee.

The provisions are comparable to those familiar ones contained in standard contracts for short-term leases of passenger vehicles.

It seems clear to me that the protection against risk of damage to the vehicle is a form of collision insurance, with a $250 deductible clause, and should be treated as such. By the terms of the rental contract, this collision coverage is forfeited only if the vehicle is used, operated or driven in violation of any of the provisions of the contract.

The reasoning of the District Judge, which my Brothers have adopted, was that Ryder had no authority, express or implied, under the rental contract to tow the rented tractor, and that Ryder violated the contract by towing the tractor back to Cross Country's terminal. I cannot agree that Ryder violated the contract by choosing to tow, rather than drive, the rented vehicle from Augusta to Abingdon.

It is well settled in insurance law that a party undertaking to protect another party from specified risks of loss has the obligation to state with reasonable clarity the circumstances under which the protection will be withheld. Doubts as to the existence of such circumstances should be resolved against the insurer and in favor of coverage. *See, e. g.,* Mutual Life Ins. Co. of New York v. Hurni Co.,

263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235; Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 439, 57 S.Ct. 607, 81 L.Ed. 732.

Although the rental contract contains several limitations on the use of the rented vehicle, including an express prohibition against using the rental vehicle to tow any other vehicle, it contains no specific prohibition against towing the rental vehicle itself. In fact, the contract takes note of the fact that it might be necessary at times to tow the vehicle and allocates the cost of doing so to the lessee. The contract does prohibit operation of the vehicle "[o]utside the scope of the driver's employment and the usual course of business of RENTER," but I do not see how that restriction denies Ryder the authority to tow the vehicle as it did.

It was necessary for Ryder to get the rented tractor from Augusta to Abingdon, a distance of some three hundred miles, and it could do so either by having it driven or by having it towed or hauled. The evidence was that Ryder frequently towed its own trucks by means of a Towmaster and that was the method it decided to employ in this case. It was certainly the logical and economical method to use. One of Ryder's tractors equipped with a Towmaster was being sent from Augusta in the general direction of Abingdon to pick up the disabled Ryder tractor. There was no reason why the same tractor and driver could not tow the Cross Country tractor to Abingdon first. By doing so, Ryder was able to avoid the expense and inconvenience of assigning another driver to drive the rented tractor to Abingdon and getting him back to Augusta.

Ryder did not show that the particular method of towing it regularly employed was the customary method of truckers in general, but it did show that it was its standard practice and that its drivers did it in the regular course of their employment. Utilization of that method was not contrary to the rental agreement's prohibition against operation of the

vehicle outside the usual course of Ryder's business.[1]

Nor, can it be said that towing was in any way inconsistent with Ryder's obligation to pay for "the mileage covered by the VEHICLE" during the period of the rental contract. Ryder was making no secret of the fact that it was towing the tractor back to Abingdon. Its conduct was as open as it could be, and there is no evidence that Ryder intended to cheat Cross Country out of the $48 in mileage charges for the trip from Augusta to Abingdon.

Ryder having done nothing to forfeit the $250 deductible collision coverage purchased as part of the rental agreement, I would limit its liability accordingly.[2]

1. The record does not contain proof of any general industry practice. Ryder's may or may not have been consistent with it, but the exclusion is referable to Ryder's business, not to industry practice. The District Judge did not rely upon any assumed industry practice; he found that towing the tractor was outside the usual course of Ryder's business, but all of the evidence contradicts the finding. The further finding that the contract contemplated only operation of the tractor on highways under its own power is irrelevant to the insurance question, of course, if towage was not a violation of a positive insurance condition.

2. The District Court was obviously impressed with the fact that the damage to the tractor was occasioned by the failure of Ryder's towing equipment and was not the result of any fault on the part of Cross Country. Damage to a leased vehicle is much more likely to be attributable to the fault of the lessee in possession than to that of the lessor, but the lessee is entitled to the protection of collision insurance he purchases from the lessor regardless of fault, unless the coverage was forfeited under some positive provision of the contract.