Present: All the Justices

JAMES KLAIBER

v. Record No. 022852

FREEMASON ASSOCIATES, INC., ET AL.

                                    OPINION BY
                          JUSTICE LAWRENCE L. KOONTZ, JR.
                                  October 31, 2003

RICHARD SIENICKI

v. Record No. 022853

FREEMASON ASSOCIATES, INC., ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
               John C. Morrison, Jr., Judge


    This consolidated appeal involves two separate suits
asserting various claims for damages arising from the
conveyances of two individual units of a condominium.  In each
case, the trial court granted summary judgment in favor of the
defendants on all the claims and dismissed the suits.  The
primary issue we consider is whether the trial court erred in
ruling, as a matter of law, that the plaintiffs failed to allege
an injury in each claim and, thus, they could not recover
damages under the facts as stated in the pleadings and
admissions.

                          BACKGROUND

    "Because the trial court granted summary judgment pursuant
to Rule 3:18, our review of the facts is limited to pleadings,

orders, and admissions of the parties." Andrews v. Ring, 266 Va. 311, 316, 585 S.E.2d 780, 782 (2003).  Moreover, we review those portions of the record in the light most favorable to the parties against whom summary judgment was granted.  Wilby v. Gostel, 265 Va. 437, 440, 578 S.E.2d 796, 797 (2003).

Summarizing the facts in accord with these principles, the record shows that in a motion for judgment filed on June 13, 2000 in the Circuit Court of the City of Norfolk (the trial court), 313 Freemason, A Condominium Association, Inc. (the Association), James Klaiber, Richard Sienicki, Daniel Khoury, and Eric and Catherine Steffan, sought damages from Freemason Associates, Inc., Conley J. Hall, and Thomas M. Dana for alleged defects in the roof, chimneys, fireplaces, and flues of a four-unit condominium located at 313 Freemason Street in the City of Norfolk.  Klaiber, Sienicki, Khoury, and the Steffans were at that time owners of the various individual units of the condominium and the entire membership of the Association.  Hall and Dana had initially commenced the development of the condominium.  Subsequently they formed Freemason Associates, Inc., which completed the project, marketed, and sold the individual units of the condominium.

Klaiber purchased unit four in February 1999 for $200,000. Sienicki purchased unit one in January 1999 for $135,000.

2

K.B.B. Corp., (K.B.B.), d/b/a Re/Max Central Realty, acted as the seller's real estate agent in these transactions.

By an order dated April 18, 2001, the trial court severed the claims of the individual plaintiffs and the Association, and directed that each case thereafter proceed independently, except for purposes of conducting discovery. At that time, Klaiber had sold his condominium unit for $216,000, and Sienicki had sold his unit for $170,000. In both transactions, agreements were executed purporting to continue the voting rights of Klaiber and Sienicki in the Association with respect to the pending litigation so that each would bear the costs of any assessment made by the Association for repairs to the condominium building but would also receive the proceeds of any settlement reached in the litigation.

On June 2, 2001, Klaiber and Sienicki separately filed motions for judgment against Freemason Associates, Inc., Hall, Dana (collectively hereafter, Freemason), and K.B.B. Asserting identical theories of actual fraud, fraudulent misrepresentation, constructive fraud, false advertising under Code § 59.1-68.3, breach of contract, and breach of the statutory warranty provided by Code § 55-79.79 of the Condominium Act, Klaiber and Sienicki each sought compensatory damages of $380,000. The pleadings did not contain a specific

factual allegation of the measure by which the alleged damages were established.

During discovery, it was established that the Association had paid $37,120 to replace the roof of the condominium and had incurred ongoing attorney's fees in the pending litigation. The Association had imposed special assessments on the individual unit owners to recover those costs. It was further established that Klaiber and Sienicki had paid $14,884 each to satisfy those assessments. In addition, Klaiber had paid $3,852.13 to repair water damage to his unit resulting from the defective roof, and Sienicki had paid $155.90 to remove the gas logs in the fireplace in his unit. Both parties also stated that they claimed "damages in the amount of any future special assessments for roof replacement, attorney's fees and repair and refurbishment of the fireplaces and chimneys."

On June 3, 2002, Freemason filed a joint motion for summary judgment asserting, among other things, that neither Klaiber nor Sienicki could prove actual damages with respect to any of their claims because they had sold their units at a "profit" and would have no further liability with respect to the repair of the alleged defects in the roof, chimneys, fireplaces, and flues in question. K.B.B. subsequently filed its own motion for summary judgment in which it essentially adopted the assertions of the motion filed by Freemason.

4

Klaiber and Sienicki opposed the motions for summary judgment, contending that under the previously referenced agreements with the purchasers of their units they had a continuing interest in the litigation. They further contended that they had alleged an adequate measure of their damages because each had paid the special assessments related to the "cost of the replacement of the roof, attorney's fees, and is subject to their proportionate share of the cost of correcting the problem with the chimneys, flues and fireplaces." Accordingly, notwithstanding the profit each had earned in selling their units, Klaiber and Sienicki maintained that their claims were not affected by those sales.

Following oral argument by the parties, the trial court issued an opinion letter dated August 30, 2002. In pertinent part, the trial court first determined that Klaiber and Sienicki could not recover for damages to the roof which was conceded to be a common element of the condominium. The court then determined that neither Klaiber nor Sienicki would be permitted to maintain his various claims with regard to the alleged defective chimneys, fireplaces, and flues. Relying on Lloyd v. Smith, 150 Va. 132, 149, 142 S.E. 363, 367 (1928), for the proposition that "the facts showing the fraud and the resulting damage must be alleged," the court concluded that neither Klaiber nor Sienicki had "alleged an injury" with sufficient

5

specificity to recover damages under the three fraud claims. Implicitly, the court reached this conclusion because they had sold their units at a profit. Similarly, with respect to the Code § 59.1-68.3 claim, the trial court found that Klaiber and Sienicki had not alleged that they had suffered any "loss" as required by the statute. With respect to the breach of contract claim, the court found that Klaiber and Sienicki had not alleged any actual damages resulting from the alleged breach. Finally, with respect to the breach of warranty claim, the court found that Klaiber and Sienicki had "suffered no injury" and had no "standing" to pursue that claim.

In final orders dated September 9, 2002, the trial court entered summary judgment in favor of Freemason and K.B.B. and against Klaiber and Sienicki. Both orders adopted by reference the reasoning of the August 30, 2002 opinion letter. We awarded appeals to Klaiber and Sienicki, consolidating the appeals for briefing and argument.

## DISCUSSION

A trial court may appropriately grant summary judgment only in cases in which no material facts are genuinely in dispute. Rule 3:18; Thurmond v. Prince William Professional Baseball Club, Inc., 265 Va. 59, 64, 574 S.E.2d 246, 250 (2003); Majorana v. Crown Central Petroleum Corp., 260 Va. 521, 525, 539 S.E.2d 426, 428 (2000). Moreover, "the decision to grant a motion for

6

summary judgment is a drastic remedy." Turner v. Lotts, 244 Va. 554, 556, 422 S.E.2d 765, 766 (1992); see also Slone v. General Motors Corporation, 249 Va. 520, 522, 457 S.E.2d 51, 52 (1995). As previously noted, our review of the record is limited to the parties' pleadings, requests for admissions, and interrogatories. Therefore, "we review the record applying the same standard the trial court must adopt in reviewing a motion for summary judgment, accepting as true 'those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason.' " Dudas v. Glenwood Golf Club, Inc., 261 Va. 133, 136, 540 S.E.2d 129, 130-31 (2001) (quoting Dickerson v. Fatehi, 253 Va. 324, 327, 484 S.E.2d 880, 882 (1997)); see also Carson v. LeBlanc, 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993).

As we begin to recite our analysis in this appeal, it is important to keep in mind that the cases under consideration do not present us with the issue whether Klaiber and Sienicki failed to adequately plead facts to support the various legal theories under which they asserted liability against Freemason and K.B.B. Rather, our focus is upon the trial court's ruling that Klaiber and Sienicki would be unable to prove, as a matter of law, any injury or resulting damages arising from the acts of

7

Freemason and K.B.B. under those claims of liability.[1]  As did the trial court, we will consider seriatim the sufficiency of the record to show injury and damages under the various theories of liability in three groups:  the fraud claims, the Code § 59.1-68.3 claims, and the breach of contract and warranty claims.

## The Fraud Claims

Klaiber and Sienicki alleged in their motions for judgment that "as a direct and proximate result" of actual fraud, fraudulent misrepresentation, or constructive fraud by Freemason and K.B.B., they "suffered damages."  To sustain their claims of fraud under any of these theories, they were required to plead: a false representation of a material fact; made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; reliance on that false representation to their detriment; and resulting damage.  Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). What is more, "[a]n allegation of fraud in the abstract does not

---

[1] In an alternative ruling, the trial court concluded that Virginia does not recognize an independent cause of action for fraudulent misrepresentation, as distinct from a cause of action for actual fraud.  Klaiber and Sienicki have assigned error to this ruling.  As will become clear, our resolution of their other assignment of error regarding their fraud claims renders the issue moot and, accordingly, we will express no opinion thereon.

8

give rise to a cause of action; it must be accompanied by allegation and proof of damage." Community Bank v. Wright, 221 Va. 172, 175, 267 S.E.2d 158, 160 (1980).

In Community Bank, we observed that " 'the rule as to what constitutes damage [for fraud], in any case, may broadly be stated to be that there is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed.' "[2] Id. (quoting Cooper v. Wesco Builders, Inc., 281 P.2d 669, 672 (Idaho 1955)). Where the alleged fraud occurs in a commercial transaction involving the transfer of real property, we have more succinctly defined the measure of damages as "the difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the [fraudulent] representation been true." Prospect Development Co. v. Bershader, 258 Va. 75, 91, 515 S.E.2d 291, 300 (1999). Similar to the situation in Prospect Development, Klaiber and Sienicki did not allege facts to support a conclusion that the actual

_____

[2] This rule is different from the rule generally applicable to trespassory torts, where the measure of damages can be either the difference in market value of the property before and after the trespass or the cost of restoring the property to its former condition, but only if the cost measure of damages is less than the market value measure of damages. See, e.g., Norview Cars, Inc. v. Crews, 208 Va. 148, 149 n.1, 156 S.E.2d 603, 605 n.1 (1967).

value of their condominium units at the time they purchased them was less than the value those units would have had absent the fraudulent acts of Freemason and K.B.B.[3]  Moreover, to the extent that Klaiber and Sienicki alleged damages in the form of costs of repair or replacement of defective elements of the condominium, we expressly declined to adopt this measure of damages in fraud cases.  Id.

Klaiber and Sienicki contend that their cases can be distinguished from Prospect Development.  They contend that the damages in that case were premised on a misrepresentation of the aesthetic condition of adjoining property for which there was no remedial solution, whereas their damages relate to defects in the property which are subject to correction through remedial efforts with ascertainable costs.  This is a distinction without a difference.  The fact remains that repair or replacement costs are not the proper measure of damages for fraud in these cases.  Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Freemason and K.B.B. on the claims alleging liability based upon fraud.

---

[3] We also note, as did the trial court, that Klaiber and Sienicki did not allege that the subsequent purchasers of their units would have paid more for the units with "working" fireplaces.

10

## The Code § 59.1-68.3 Claims

Code § 59.1-68.3 provides, in relevant part, that "[a]ny person who suffers loss as the result of a violation of Article 8 (§ 18.2-214 et seq.), Chapter 6 of Title 18.2 . . . shall be entitled to bring an individual action to recover damages, or $100, whichever is greater." The allegations in the motions for judgment assert that the prerequisite violation here was the making of untrue, deceptive, and misleading statements in advertising in violation of Code § 18.2-216.

We have not heretofore addressed the question of the appropriate measure of damages for a claim arising from a violation of Code § 59.1-68.3 although we have held that "the statutory cause of action for false advertising [under this statute] is not properly analogized to a common law cause of action for fraud." Parker-Smith v. Sto Corp., 262 Va. 432, 440, 551 S.E.2d 615, 619 (2001). The statute by its express terms requires, however, that the plaintiff must "suffer[] loss" in order to recover damages, either actual or in the statutory de minimis amount.

Under the procedural posture of this case, we must assume that Freemason and K.B.B. did in fact make untrue, deceptive, and misleading statements in advertising, that Klaiber and Sienicki were thereby induced to purchase their condominium units, and that they would not have done so in the absence of

11

the siren inducement of these unlawful statements.  The question then becomes what "loss" did Klaiber or Sienicki suffer at the time of that transaction?  As with the claims for fraud, simple logic dictates that the answer is none.

Klaiber and Sienicki were induced to purchase property upon an assertion of it being in a non-defective condition and, by their own admission, subsequently sold that property in a known defective condition at a profit.  Under such circumstances, there is simply no basis upon which a finder of fact could conclude that they had suffered any loss or damages.  Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Freemason and K.B.B. with respect to the Code § 59.1-68.3 claims.

### The Breach of Contract and Warranty Claims

The breach of contract and breach of warranty claims, asserted here only against Freemason, may be considered together because under the facts of this case "[l]abeling the claim a breach of warranty rather than a breach of contract does not alter the nature of the claim."  <u>Waterfront Marine Construction, Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C</u>, 251 Va. 417, 435, 468 S.E.2d 894, 904 (1996).  The measure of damages under either theory would be the same.

Moreover, the measure of damages for breach of contract or breach of warranty is not necessarily limited to the same

12

measure of damages applicable to fraud torts or statutory false advertising. Under certain circumstances, a party seeking to restore the benefit of a bargain or to enforce a warranty is permitted to show that the cost of remedying the breach is the appropriate measure of damages. "The cost measure is calculated on the basis of the cost to complete the contract according to its terms or the cost to repair what has been done so that the contract terms are met. The cost measure is appropriate unless the cost to repair would be grossly disproportionate to the results to be obtained, or would involve unreasonable economic waste." Lochaven Co. v. Master Pools by Schertle, Inc., 233 Va. 537, 543, 357 S.E.2d 534, 538 (1987); see also Green v. Burkholder, 208 Va. 768, 771, 160 S.E.2d 765, 768 (1968); Kirk Reid Company v. Fine, 205 Va. 778, 789, 139 S.E.2d 829, 837 (1965).

In its August 30, 2002 opinion letter, the trial court concluded that "Klaiber and Sienicki have not alleged any actual damages resulting from [Freemason's] alleged breach" of contract and that they have "suffered no injury from" the alleged breach of the statutory warranty. The former conclusion is not supported by the record when viewed in the light favorable to Klaiber and Sienicki; the latter conclusion is a premature determination of a disputed fact. As such, neither can form the basis to support summary judgment in favor of Freemason.

13

It is certainly accurate that their motions for judgment made only a generalized assertion that Klaiber and Sienicki had "suffered damages" as a result of the alleged breaches of contract and statutory warranty. However, in response to discovery requests, both Klaiber and Sienicki asserted that they remained liable to the purchasers of their respective condominium units for costs to repair the chimneys, fireplaces, and flues. Because repair cost is one form of measure of damage for breach of contract or warranty, this is an adequate factual allegation of injury and damage to survive a motion for summary judgment. Accordingly, we hold that the trial court erred in granting summary judgment in favor of Freemason with respect to the claims for breach of contract and breach of warranty asserted by Klaiber and Sienicki.

Our conclusion that summary judgment was not appropriate for the breach of contract and breach of warranty claims requires us to consider a further assignment of error raised by Klaiber and Sienicki with respect to the trial court's ruling that they are barred from seeking damages for the alleged defect in the roof because it was a common element of the condominium. The trial court reasoned that because the roof was a common element, which Klaiber and Sienicki concede, the Condominium Act gave the unit owners' association the exclusive right to sue for the alleged defects. See Code §§ 55-79.53, 55-79.79, and 55-

14

79.80.  Klaiber and Sienicki contend that the trial court erred in ruling that the right to sue afforded to a unit owners' association precluded individual unit owners from maintaining private causes of action for defects in common elements. Freemason, though not conceding the issue, contends that when Klaiber and Sienicki sold their condominium units, they were required by the terms of the condominium declaration to transfer all rights in the Association to the new owners.  Continuing, Freemason contends that the attempts to retain or be reassigned voting rights in the Association, and by extension an interest in litigating claims relating to common elements, were ineffective.

We need not address the merits of the parties respective positions on this issue because subsequent events in the Association's suit against Freemason, of which we take judicial notice, render the point moot.  After the trial court ordered severance of the actions of the individual unit owners from that of the Association, the Association proceeded with its suit against Freemason.  See Dana v. 313 Freemason, A Condominium Association, Inc., 266 Va. ___, ___ S.E.2d ___ (2003) (today decided).  In that suit, the trial court ruled that the Association could proceed only on the claims asserted for the alleged defect in the roof.  The Association ultimately prevailed at trial and was awarded a judgment for damages,

15

attorney's fees, and costs against Freemason Associates, Inc. The Association was further permitted to pierce the veil of that corporation in order to recover on that judgment from Dana and Hall. Because we have today affirmed the judgment in that case, it is a matter of record that fair and complete damages for the defect in the roof have been assessed. Thus, because Freemason would be subjected to an impermissible double recovery for the defective roof, the issue of Klaiber's and Sienicki's standing to seek damages for that condition is rendered moot.

Accordingly, we hold that on remand, Klaiber and Sienicki will be limited to seeking damages for breach of contract and breach of warranty only with respect to the alleged defects in the chimneys, fireplaces, and flues. We emphasize that our decision today does not address the merits of those claims, but only whether it was proper for the trial court to award summary judgment thereon.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court awarding summary judgment to Freemason and K.B.B. on the claims for fraud, fraudulent misrepresentation, constructive fraud, and false advertising under Code § 59.1-68.3. We also will affirm on different grounds the trial court's judgment that Klaiber and Sienicki may not recover damages for the defect in the roof. We will reverse the trial court's award of summary

16

judgment in favor of Freemason on the breach of contract and breach of warranty claims with respect to the alleged defects in the chimneys, fireplaces, and flues and remand the cases for further proceedings consistent with the views expressed in this opinion.

Affirmed in part,
reversed in part,
and remanded.